UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-194 (ADM/TNL)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DONATUS RAY HARRELL,

        Defendant.

**GOVERNMENT'S POSITION ON SENTENCING**

    The United States of America, by and through its attorneys, Lisa D. Kirkpatrick, Acting United States Attorney for the District of Minnesota, and Ruth S. Shnider, Assistant United States Attorney, hereby respectfully submits its position on sentencing with regard to Defendant Donatus Ray Harrell. For the reasons set forth below, the Government submits that the appropriate sentence is 188 months, the bottom of the applicable Guidelines range.

## BACKGROUND & PRESENTENCE INVESTIGATION

    On November 6, 2024, Mr. Harrell pleaded guilty to Count 1 of the indictment, charging him with possession with intent to distribute 500 grams or more of cocaine. The charge arose from an investigation in April 2024. Investigators learned that Harrell was supplying cocaine in the St. Paul area and determined that he had recently had his girlfriend rent an apartment for him on Burns Avenue. Officers got a warrant to do a canine sniff at the door

1

of the Burns Avenue apartment, and the dog alerted to the scent of narcotics.

On May 1, 2024, Harrell was located at a bar in St. Paul and arrested on other outstanding warrants. He had on his person over $2,000 in cash, a digital scale, two cell phones, and a set of keys. Officers then planned to execute a warrant to search the Burns Avenue apartment. But before executing the search warrant, a St. Paul Police officer pulled Harrell's early morning jail calls from the Ramsey County Jail. In one call, Harrell could be heard telling a woman that the "good thing" was he "didn't have anything on him" when he was arrested, so he didn't get a new charge. Harrell also told the woman he had "two thousand" dollars on him when he was arrested, and he had "about five thousand" more at his house. The woman then three-way called Harrell's girlfriend, and Harrell told her that she needed to come pick up his jail property, including the "keys to the safe." Harrell explained that when she got to his house, she needed to count all the money in the safe and "count whatever—count everything that's in that black bag, and tell me how many is in that black bag, and that will let me know everything I need to know."

Agents used the keys found on Harrell's person to unlock the Burns Avenue apartment and, once inside, used another one of his keys to open a safe found in the master bedroom. Inside the safe was 547 grams of cocaine (net weight) packaged into nine separate baggies that were all inside a larger

2

black plastic bag. Also in the safe was $5,250 in cash; two loaded 9mm handguns (Century Arms and Springfield); and multiple cards with Harrell's name on them.





The master bedroom only contained men's clothing, and the second bedroom appeared to have children's belongings. A scale with drug residue, numerous

small plastic baggies, and additional documents in Harrell's name were found elsewhere in the apartment.

The United States has reviewed the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office and has no objections to the recitation of the offense conduct set forth therein. (*See* PSR ¶¶ 7-10). The Government also does not object to the PSR's findings that Mr. Harrell qualifies as a Career Offender and has a total offense level of 31, a Category VI criminal history, and a Guidelines range of 188 to 235 months' imprisonment. (PSR ¶¶ 21, 95). There is a 60-month mandatory minimum in this case. (PSR ¶ 94).

As summarized in the PSR, Mr. Harrell received 15 criminal history points, and thus would be a Category VI even if he were not a Career Offender. (PSR ¶ 44). He started picking up violent felony convictions at the age of only 17 years old (PSR ¶¶ 30-31), and started accruing drug convictions shortly thereafter (PSR ¶¶ 32-34). Starting in his mid-20s, Harrell accrued a litany of convictions related to domestic violence and other violence against women. (PSR ¶¶ 35-41). These cases involved allegations of beating a woman in the face with a telephone (PSR ¶ 35); barging into a woman's home, assaulting her, and preventing her minor children from calling the police (PSR ¶ 37); sneaking into a woman's home at night and choking her in bed (PSR ¶ 38); punching a woman in her face, breaking her jaw (PSR ¶ 39); threatening to break a

4

different woman's jaw (PSR ¶ 40); twisting a woman's leg until she could not stand on it (PSR ¶ 41); and repeatedly violating no-contact orders with his primary victim (PSR ¶¶ 36, 38, 40, 41).  He currently has a first-degree assault case pending in Hennepin County alleging that he beat his pregnant girlfriend (in front of her 3-year-old), causing her to go into premature labor and putting her infant twins into the NICU.  (PSR ¶ 54).  The twins were subsequently diagnosed with cerebral palsy.  (PSR ¶ 67).

The defense has lodged an objection to application of the Career Offender guideline to "preserve the issue." (ECF No. 38 at 1).  This objection may be overruled as a matter of law.  Harrell has prior felony convictions for fifth-degree assault (Minn. Stat. § 609.224) and domestic assault (Minn. Stat. § 609.2242). (PSR ¶¶ 39, 41).  Both crimes require proof that the defendant "(1) commit[ted] an act with intent to cause fear in another of immediate bodily harm or death; or (2) intentionally inflict[ed] or attempt[ed] to inflict bodily harm upon another." Minn. Stat. §§ 609.224, subd. 1; 609.2242, subd. 1.  They thus both have as an element "the use, attempted use, or threatened use of physical force against the person of another" and qualify as crimes of violence under U.S.S.G. § 4B1.2(a)(1).  *See, e.g., United States v. Spight*, 239 F. Supp. 3d 1112, 1119 (D. Minn. 2017) (noting that "the Eighth Circuit [has] concluded that felony convictions of the Minnesota domestic abuse statute— which contains identical elements and definitions to those for assault in the

5

fifth-degree—are predicate felonies pursuant to the force clause of the ACCA" (citing *United States v. Schaffer*, 818 F.3d 796, 798–99 (8th Cir. 2016)).

## THE APPROPRIATE SENTENCE

The primary issue before the Court is what constitutes a reasonable sentence in light of the factors enumerated in Title 18, United States Code, Section 3553(a). Based on a balancing of the issues set forth below, the Government believes a sentence of 188 months is sufficient but not greater than necessary to achieve justice in this case.

Harrell offense conduct, though somewhat typical for a federal drug case, is nonetheless serious and dangerous: cocaine, cash, guns, all found in a covertly rented apartment. While the recovery of the contraband from inside a locked safe may at first blush seem to diminish its danger, common sense dictates otherwise. The drugs were packaged for sale into the community, and Harrell likely toted a gun to transactions of various sorts—to protect his drugs, money, or both.

But what makes this case especially serious is the backdrop that lies directly behind it. Mr. Harrell has fully earned his designation as a Career Offender. Even discounting the allegations in his past and pending cases by half, his history of violence against women is likely one of the more alarming criminal histories that will come before this Court. For nearly 20 years, he has been beating and degrading women, and then violating court orders designed

to protect them. Despite numerous arrests and convictions this conduct, Mr. Harrell apparently believed himself so impervious to the law that he began (or continued) supporting himself through armed drug dealing. And he used yet another woman in his life to rent him an apartment where he could do so.

Although the Government is not aware of an incident where Mr. Harrell has used or threatened to use a firearm against another person, his possession of guns remains particularly troubling given his extensive history of domestic violence. Domestic abusers with access to guns are five times more likely to kill their victims. *See* Campbell, Jacquelyn et al., *Risk Factors for Femicide in Abusive Relationships: Results From a Multisite Case Control Study*, American Journal of Public Health (July 2003) ("[C]onsistent with other research, gun availability still had substantial independent effects that increased homicide risks. As expected, these effects were due to gun-owning abusers' much greater likelihood of using a gun in the worst incident of abuse[.]"), *available at* https://ajph.aphapublications.org/doi/full/10.2105/AJPH.93.7.1089. This case presents an opportunity to intervene *before* Harrell's affinity for guns and for violence combine to produce disastrous results.

Modest terms of imprisonment have done nothing to deter Mr. Harrell. Admittedly, 188 months is a significant graduated sanction compared to his prior terms of imprisonment (which have been in the range of 2-3 years). But it is clear that Harrell poses serious dangers to the community – and it is far

7

less clear that he is willing to do the long and difficult work of reforming his ways. It appears he only recently began any serious effort at mental health treatment or drug treatment, while in custody. (PSR ¶¶ 73, 79). Only a sustained period of time in prison seems likely to give Mr. Harrell the focus and self-reflection he will need to battle his demons.

That is not to say there are not mitigating circumstances here – there clearly are. Indeed, it is tragically predictable that a person who exhibits such patterns of violent behavior would themselves have been a victim of violence. Mr. Harrell reports childhood trauma of a nature that no person should ever have to endure. (PSR ¶¶ 60-63). It is also true that Harrell accepted responsibility in this case almost immediately, despite his high sentencing exposure. It is for these reasons that the Government is seeking a sentence at the bottom of the applicable Guidelines range. But given the seriousness of Harrell's criminal history and the instant offense conduct, the Government is not persuaded that a further downward variance is warranted here.

## **CONCLUSION**

For all the foregoing reasons, absent any grounds for departure, the United States respectfully recommends that the Court impose a sentence of 188 months in prison, followed by the required 4 years of supervised release.

Dated: March 24, 2025	Respectfully submitted,

LISA D. KIRKPATRICK
Acting United States Attorney

/s/ *Ruth S. Shnider*
BY: RUTH S. SHNIDER
Assistant U.S. Attorney